IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JEREMY E. NOWLIN, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-00209-N-REB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Now pending before the Court is Jeremy E. Nowlin's Petition for Review (Docket No. 1),

seeking review of the Social Security Administration's decision to deny the Petitioner's claim

for Title II and Title XVI disability benefits after September 1, 2005. This action is brought

pursuant to 42 U.S.C. §§ 405(g), 1383(c). Having carefully reviewed the record, and otherwise

being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  INTRODUCTION

Jeremy E. Nowlin ("Petitioner") seeks judicial review of two final decisions of the

Commissioner of Social Security ("Commissioner"). The first decision, arising under Title XVI

of the Social Security Act, found that Petitioner was no longer disabled as of July 1, 2005, thus

terminating his childhood Supplemental Security Income ("SSI") disability benefits effective

**MEMORANDUM DECISION AND ORDER - 1**

September 1, 2005.  (AR 6, 392-407).  The second decision, arising under Title II of the Social

Security Act, partially granted and partially denied Petitioner's application for a Period of

Disability and Disability Insurance Benefits.  (AR 9-17, 22-34).  This second decision, like the

first, found that Petitioner's disability had ceased as of July 1, 2005, and that Petitioner was

therefore not entitled to a period of disability or disability insurance benefits after September 1,

2005.[1]  Through this action, Petitioner challenges the Commissioner's determination that

Petitioner was not disabled as of July 1, 2005.

## II.  ADMINISTRATIVE PROCEEDINGS

In a determination dated January 10, 1992, Petitioner's childhood application for SSI

disability benefits was granted, with a disability onset date of February 27, 1990.  (AR 398).

Petitioner's disability continued, based on an August 14, 1996 continuing disability review by

Maximo J. Callao, Ph.D.  (AR 37, 398).  However, nearly nine years later, another continuing

disability review found that Petitioner had medically improved and that his disability ceased as

of July 1, 2005.  (AR 38, 42-45, 398).

On July 8, 2005, Petitioner requested reconsideration of the disability cessation

determination, stating: "I am not mentally or physically able to work at this time.  I get angry

easily with others.  My bad knee swell[s] up on me and cause[s] me pain."  (AR 54).  On

November 18, 2005, a disability hearing officer affirmed the initial, unfavorable determination,

finding, again, that Petitioner was no longer disabled as of July 1, 2005.  (AR 39, 93-102, 398).

---

[1] Based on the Commissioner's finding that Petitioner's disability ended July 1, 2005,
Petitioner's entitlement to a period of disability and disability insurance benefits ended
September 1, 2005 - the end of the second calendar month after the month in which the disability
ended.  (AR 17); *see also* 24 C.F.R. § 404.316(b)(3).

**MEMORANDUM DECISION AND ORDER - 2**

On January 13, 2006, Petitioner requested a hearing before an Administrative Law Judge ("ALJ"), stating in his application: "I am still disabled."  (AR 128).[2]

The ALJ held two hearings (one on November 28, 2006; the other on February 1, 2007) on the combined issues of Petitioner's medical improvement under Title XVI and his denied application under Title II.  (AR 338-353, 354-391).  On August 20, 2007, the ALJ issued separate decisions on each issue. (AR 395-407, 22-37).  As to the Title XVI claim, the ALJ concluded that "[Petitioner's] disability ended on September 1, 2005, and that the [Petitioner] has not become disabled again since that date."  (AR 398).  As to the Title II claim, the ALJ concluded that "[Petitioner] was not under a disability within the meaning of the Social Security Act from August 15, 2003 through the date last insured[, June 30, 2006]."  (AR 25-26).

On April 15, 2008, the Appeals Council denied Petitioner's request for review on the issue of Petitioner's medical improvement under Title XVI (AR 6-8, 392-395), making the ALJ's decision in this respect the final decision of the Commissioner of Social Security.  On that same day, the Appeals Council also issued a partially-favorable decision on the issue of Petitioner's denied application under Title II, concluding that Petitioner is entitled to a period of disability beginning on August 15, 2003, but ending on September 1, 2005.  (AR 9-17).[3]

---

[2]  Although not entirely clear from the record, apparently, on April 13, 2005, Petitioner protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning August 15, 2003.  (AR 398).  The claim was denied initially on July 1, 2005, and upon reconsideration on November 18, 2005.  *See id.*  Petitioner then filed a timely written request for hearing - also on January 13, 2006.  *See id.*

[3]  More specifically, the Appeals Council did not adopt the ALJ's conclusions regarding whether Petitioner was disabled for the period beginning August 15, 2003 and ending July 1, 2005, reasoning that a previous determination of disability collaterally estopped any finding of non-disability from August 15, 2003, when Petitioner last worked, to July 1, 2005, when medical improvement was found.  (AR 15-17).

**MEMORANDUM DECISION AND ORDER - 3**

Consistent with both of these rulings, and providing the impetus for the instant dispute, the Appeals Council found that Petitioner's period of disability ended July 1, 2005, thus ending Petitioner's receipt of disability insurance benefits as of September 1, 2005 (*see supra* at p. 2, n. 1).  Petitioner disagrees, claiming that his disability extended beyond July 1, 2005.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing the ALJ erred  by (1) failing to give adequate consideration to the report of Dr. William M. Green, Ph.D, while improperly relying upon the opinion of a non-examining, non-treating medical advisor; (2) failing to set forth adequate reasons for discrediting Petitioner's testimony; and (3) improperly rejecting the testimony of Petitioner's mother during the administrative hearing on February 1, 2007.  *See* Pet. for Review, p. 3 (Docket No. 1); *see also* Pet.'s Brief, p. 2 (Docket No. 8).  Petitioner therefore requests that this Court reverse the ALJ's finding that Petitioner was no longer disabled after July 1, 2005 or, alternatively, remand the action for proper consideration of the issues noted immediately above.[4]

### III.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

---

[4] For the purpose of his Petition for Review, Petitioner concedes that his alleged knee problems do not rise to the level of a covered disability.  *See* Pet.'s Brief, p. 2 (Docket No. 8).

**MEMORANDUM DECISION AND ORDER - 4**

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 5**

## IV.  DISCUSSION

**A.      Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person either is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) within the meaning of the Social Security Act.

### 1.      Evaluation of Disability in General: The Five-Step Sequential Process

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ concluded that Petitioner has not engaged in SGA after his alleged onset date.  (AR 27).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 6**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: personality disorder and bilateral knee pain.  (AR 27).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 28-29).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that

**MEMORANDUM DECISION AND ORDER - 7**

disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual functional capacity to perform a full range of light work, including his former job as a customer care worker for a telephone company.  (AR 29-33).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Here, even though the ALJ found that Petitioner was capable of performing past relevant work, the ALJ alternatively found that Petitioner maintained the ability to perform a significant number of jobs in the national economy, a finding supported by the framework of Medical-Vocational Rule 202.21.  (AR 33-34).

2.      Evaluation of a Continuing Disability: The Seven-Step Sequential Process

Assuming the claimant is not engaged in SGA, the first step requires the ALJ to determine whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i).  If the claimant does have such an impairment or combination of impairments, his/her disability continues.  *See id*.  In harmony with the third step referenced

**MEMORANDUM DECISION AND ORDER - 8**

above, the ALJ found that, since September 1, 2005, Petitioner has not had an impairment or combination of impairments which meets or medically equals the severity of a listed, qualifying impairment.  (AR 400).

If a claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the second step asks whether medical improvement has been achieved as shown by a decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs, and/or laboratory findings; if no decrease in medical severity, there has been no medical improvement.  20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(1)(i), 416.994(b)(5)(ii).  If medical improvement has occurred, the analysis proceeds to the third step; if not, the analysis proceeds to the fourth step.  Here, the ALJ found that medical improvement occurred as of September 1, 2005.  (AR 401-402).

If there has been medical improvement, at step three, the ALJ must determine whether medical improvement is related to the claimant's ability to work.  20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(5)(iii).  Medical improvement relates to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities.  20 C.F.R. § 416.994(b)(1)(iii).  If it does, the analysis proceeds to the fifth step.  Here, the ALJ confirmed that Petitioner's medical improvement is related to his ability to work as of September 1, 2005.  (AR 402).

At step four, the ALJ must determine if an exception to medical improvement applies.  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).  There are two groups of exceptions.  *See* 20 C.F.R. §§ 416.994(b)(3), 416.994(b)(4).  If one of the first group of exceptions applies, the analysis proceeds to the next step; if one of the second group of exceptions applies, the claimant's disability ends; if no exceptions apply, the claimant's disability continues.  20 C.F.R.

**MEMORANDUM DECISION AND ORDER - 9**

§§ 404.1594(f)(5), 416.994(b)(5)(iv).  Because of the ALJ's findings at steps two and three (*see supra* at p. 9), step four did not apply.

At step five, the ALJ must determine whether all of the claimant's current impairments in combination are severe.  20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).  If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled; if they do, the analysis proceeds to step six.  Here, the ALJ concluded that, since September 1, 2005, Petitioner's impairments (personality disorder and bilateral knee pain) caused more than minimal limitations on his ability to perform basic work activities.  (AR 402).

The sixth step in the evaluation process requires the ALJ to assess the claimant's residual functional capacity, based on all the current impairments, to perform past relevant work.  20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi).  If yes, disability will be found to have ended.  Consistent with the ALJ's findings when considering Petitioner's Title II claim, the ALJ determined here that Petitioner maintained the residual functional capacity to perform his past relevant work as a customer care worker for a telephone company.  (AR 402-406).

If the claimant is unable to perform past relevant work, at the seventh and final step, the ALJ must determine whether other work exists, keeping in mind the claimant's residual functional capacity and recognizing the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If so, disability will be found to have ended; if not, disability will be found to continue.  Although the ALJ did find that Petitioner was able to perform his past relevant work, as with the analysis pertinent to Petitioner's Title II claim, the ALJ alternatively found that Petitioner was not disabled because he could perform a significant

**MEMORANDUM DECISION AND ORDER - 10**

number of jobs found in the national economy, a finding supported by the framework of Medical-Vocational Rule 202.21.  (AR 406-407).

**B.  Analysis**

While there exists two separate decisions specific to Petitioner's two claims, both generate the single, discrete issue presented here - whether Petitioner's disability ended as of July 1, 2005 and thus, whether Petitioner's disability benefits should have ceased as of September 1, 2005.  By virtue of his Petition for Review (Docket No. 1), Petitioner believes that his long-standing disability did not end as of July 1, 2005; indeed, Petitioner claims that he remains disabled.  Petitioner now believes that the ALJ's decisions to the contrary are in error, challenging the ALJ's denial of disability benefits in three separate ways.  First, Petitioner argues that the ALJ failed to consider and apply properly the opinions of Dr. Green, relying instead upon the opinions of non-examining, non-treating medical advisors.  Second, Petitioner argues that the ALJ erroneously discredited his own testimony.  Finally, Petitioner argues that the ALJ improperly rejected the Petitioner's mother's testimony.

1.       Dr. Green's Opinion

In early 2007, after both administrative hearings, Dr. Green opined that Petitioner exhibited depressive, schizoid, and passive aggressive traits, along with borderline obsessive compulsive features.  (AR 320-328).  The ALJ, however, did not give controlling weight to Dr. Green's assessment to the extent it was inconsistent with competing medical opinions and the balance of the record.  (AR 31-21, 404-405).  Petitioner claims that the ALJ's decision to disregard Dr. Green's opinions is misplaced given the absence of specific and legitimate reasons for doing so.  *See* Pet.'s Brief, pp. 11-15 (Docket No. 8).

**MEMORANDUM DECISION AND ORDER - 11**

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual." *Id*. Where the treating physician's opinions are not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons, supported by substantial evidence in the record, for doing so. *Id*.

Here, Dr. Green's opinions appear to be at odds with at least one other examining doctor's findings. On June 23, 2005, Dr. Linda M. Smith conducted a psychiatric evaluation that questions whether Petitioner suffers from a personality disorder. When comparing the opinions of both Dr. Green and Dr. Smith, the differences in their respective diagnoses are obvious:

| **Dr. Green** | **Dr. Smith** |
|---|---|
| "The overall theme appears to be a mixed personality disorder that . . . gives rise to a variety of mental health symptoms, . . . [including] severe anxiety and depression, confused and emotionally painful thinking with very pronounced issues of attention, concentration and focus, and increasing feelings of anger, hostility, and argumentativeness that are likely to be expressed impulsively. This expression will likely include little or no empathy or awareness regarding the social impact on others leading to invariably heightened levels of social isolation and increased stress in a kind of negative and self perpetuating circle." (AR 327). | "There was no evidence at all of a thought disorder or psychosis . . . . [Petitioner] was relevant and non-delusional. There was no bizarre or psychotic thought content. There was no current suicidal or homicidal ideation. [Petitioner] claimed to be paranoid. There was no evidence, whatsoever, of any paranoia . . . . [Petitioner] did not appear to be responding to internal stimuli during the interview." (AR 216) |

**MEMORANDUM DECISION AND ORDER - 12**

| | |
|---|---|
| "It appears very unlikely . . . that [Petitioner] possesses enough emotional stability or quality of focus and concentration to succeed in a setting that includes any type of social interaction or the requirement of performing consistently even solitary tasks."  (AR 328) | "[Petitioner] apparently had a lot of emotional problems as a child, according to his records. There is no evidence at all, however, of Bipolar Affective Disorder today, and he certainly is not a schizophrenic.  I don't see any evidence at all of an Axis I disorder at this time.  He was totally euthymic and smiled, laughed and joked off and on throughout the interview.  He  was working at a job for two years that sounds at least moderately complex.  He has full activities of daily living now."  (AR 218) |
| "[Petitioner's] chronic personality issues appear to give rise to such vulnerability to impairing psychological symptoms that without improvement in those issues of personality any success with employment is not very likely." (AR 328) | "[Petitioner] only appears to have some histrionic traits but essentially, I do not believe that he would be impaired in his ability to work. Overall, I don't believe this claimant is impaired in his ability to work.  I don't know how he got those previous diagnoses.  It may have been when he was a juvenile but he certainly does not have schizophrenia and I highly doubt that he has Bipolar Disorder."  (AR 218) |

At this stage of the proceedings, it is not this Court's duty to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations.  Rather, this Court is tasked with determining whether the ALJ's decision in determining that Petitioner is not disabled as of July 1, 2005 is supported by the record.  To this end, given the conflicting medical opinions, the ALJ need only offer specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Green's medical opinions.  *See supra* at p. 12.

Here, the ALJ considered Petitioner to be someone who possibly exaggerates his symptoms in order to receive benefits.  (AR 31, 404).  If true, Petitioner's complaints about the limiting effects of his alleged impairments (not to mention his (in)ability to work full-time at all), must be considered in that light.  In this respect, the ALJ ironically relied upon Dr. Green who,

**MEMORANDUM DECISION AND ORDER - 13**

while commenting on Petitioner's inability to experience success in an interpersonal or social environment, had this to say about Petitioner:

> On the MMPI-2[5] and on the MCMI-III[6] the validity scales suggested a possibility of some exaggeration. This can occur for the purpose of some secondary gain or because a person is in fact experiencing a great deal of inner turmoil.

(AR 326). Even though Dr. Green attributed Petitioner's exaggerated responses to "inner turmoil" (AR 326), Petitioner's credibility is nonetheless compromised (*see infra* at pp. 17-20), potentially suggesting that Petitioner may be deliberately attempting to present himself in an overly-negative light for some perceived advantage in the evaluation process. In other words, Petitioner's actual reason for his exaggerated responses, while ultimately unknown, necessarily casts a degree of doubt on the objectivity of Dr. Green's assessment, particularly when also acknowledging (as this Court must) that Dr. Green's opinions are not without challenge. The ALJ is fully within his authority to consider this context when developing his findings.

Additionally, Petitioner's medical treatment notes reflect a ten-year period where neither his alleged personality disorder nor his corresponding medication, if any, is *ever* referenced. While the Court (1) does not question that Petitioner at one time experienced a mental disability that warranted Social Security benefits (as also recognized by the ALJ) and (2) recognizes that other reasons may possibly explain the lack of medical records during this time, it is difficult to

---

[5] The Minnesota Multiphasic Personality Inventory (MMPI-2) is a written psychological self-assessment, or test, used to diagnose mental disorders. The MMPI is used to screen for personality and psychosocial disorders in adults and adolescents, frequently administered as part of a neuropsychological test battery to evaluate cognitive functioning.

[6] The Millon Clinical Multiaxial Inventory (MCMI-III) is another self-report instrument designed to assess DSM-IV-related personality disorders and clinical syndromes.

**MEMORANDUM DECISION AND ORDER - 14**

blindly accept Petitioner's argument that his disability continued after July 1, 2005 when there is no medical support for such a finding between then and June 5, 1997.[7]  A lack of objective medical findings, treatment notes, and rationale to support a physician's opinion may offer a sufficient reason for rejecting that physician's opinion.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Lastly, as referenced earlier, Dr. Green's opinions can be interpreted as being inconsistent with other medical evidence in the record.  Along with Dr. Smith (*see supra* at pp. 12-13), Dr. Bostwick found that, while Petitioner had a personality disorder, it was not severe.  (AR 261).  In support of this finding, Dr. Bostwick further concluded that Petitioner had no restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (AR 274).[8] Notably, Dr. Bostwick later confirmed his findings during the November 28, 2006 administrative

---

[7]  Even then, Petitioner's treating physician, Dr. David L. Chambers, offered the following equivocal assessment of Petitioner's condition: "Behavior disorder with history of psychiatric evaluation in the past, no clear diagnosis at this time."  (AR 307).  In addition to raising some question as to Petitioner's proper diagnosis at that time, Dr. Chambers, regardless, did not mention any mental impairment after June 1997.

[8]  The State Disability Determination Services' non-examining physician, Dr. Henry Amado, likewise determined that Petitioner was able to understand simple instructions; able to sustain concentration and attention for simple, repetitive tasks; and able to avoid ordinary hazards in the workplace and take public transportation.  (AR 224).  Somewhat confusingly, Dr. Amado also stated that Petitioner "was not able to interact with [the] public due to irritability" (AR 224), although he previously indicated that Petitioner was only "moderately limited" in his ability to interact appropriately with the general public.  (AR 223).  Regardless, the ALJ understood that, while non-examining physicians do not as a general matter deserve as much weight as those of examining/treating physicians, Dr. Amado's conclusions deserve at least *some* weight, "particularly in a case like this in which there exist a number of other reasons to reach similar conclusions."  (AR 32, 405).

**MEMORANDUM DECISION AND ORDER - 15**

hearing.  (AR 343-348).[9]  By pointing out Dr. Bostwick's and Dr. Smith's opinions, this Court is

not commenting on whether Petitioner is actually disabled; rather, it is the possibility that Dr.

Green's medical opinions are not uncontradicted that may operate to  justify the ALJ's decision

to deny Petitioner his continued disability benefits.

However, the dissimilarities between Dr. Green's opinions and those of Dr. Bostwick and

Dr. Smith are not without their own shortcomings.  For example, it is undisputed that, while Dr.

Bostwick's opinions were based upon his review of the record, including Dr. Smith's findings,

that review did not incorporate Dr. Green's conclusions.  It therefore is not surprising that Dr.

Bostwick's opinions mirror more closely Dr. Smith's opinions than Dr. Green's.  Moreover, as

Petitioner identified, Dr. Green performed a litany of independent testing procedures alongside a

mental status examination.  *See* Pet.'s Brief, p. 12 (Docket No. 8).  Although the utility of such

procedures may be debated by the different specialists, Dr. Smith did not go to such lengths.  *See*

*id*. at pp. 13-14.  Therefore, while being cautious not to endorse one medical professional's

---

[9] During the hearing, the relevant exchange between the ALJ and Dr. Bostwick
concluded with the following exchange:

> Q:    All right.  So you've completed the form and basically have
>        indicated overall non-severe mentally.  Is that correct?
>
> A:    That's correct, Your Honor.

(AR 345).  Also, in response to Petitioner's counsel's questions during the administrative
hearing as to what effect Petitioner's emergency room medical records (AR 281-283) played on
Dr. Bostwick's conclusions, Dr. Bostwick responded:

> Well[,] I did in the sense that he – throughout the record[,] he's
> alleged that he has had diagnosed paranoid conditions, whether it be
> schizophrenia or other and a bipolar disorder and that's not been
> confirmed throughout the record.

(AR. 347).

**MEMORANDUM DECISION AND ORDER - 16**

findings over another, the Court is nonetheless comfortable in remarking that Dr. Bostwick's opinions (if truly based upon an examination of the record) are incomplete when considering that he could not have and did not take into account Dr. Green's findings when reaching his own conclusions.

There is no question that Dr. Green's medical opinions are not universally shared by others in the relevant medical community. On its face, this reality could apply to justify not only the appropriate standard applied by the ALJ, but also his decision to reject Petitioner's claims. Still, where the ALJ's reliance on Dr. Bostwick's opinions is arguably in question by the fact that Dr. Bostwick did not even consider Dr. Green's opinions, the Court is reluctant to dismiss Petitioner's claim at this time.

Certainly, in light of the above-referenced issues cutting against Petitioner's arguments (*see supra* at pp. 12-16), the Court fully recognizes and accepts the very real possibility that Petitioner's Petition for Review may ultimately be rejected. Even so, any final decision should be made after all relevant information is made available to each medical provider commenting on Petitioner's condition - in this case, Dr. Bostwick considering Dr. Green's report. Whether Dr. Bostwick would have actually amended his findings is a conjectural exercise that the Court is neither equipped to perform nor interested in engaging here.

As a result, the action will be remanded in this very limited respect to allow the ALJ the opportunity to reconsider the evidence supporting his findings, keeping in mind that Dr. Bostwick's opinions, and likewise the ALJ's reliance on those opinions, are incomplete.

    2.    Petitioner's Credibility

Petitioner also takes issue with the ALJ's conclusion that Petitioner's testimony concerning the intensity, persistence and limiting effects of his symptoms is not credible. *See*

**MEMORANDUM DECISION AND ORDER - 17**

Pet.'s Brief, pp. 15-16 (Docket No. 8).  The ALJ is in the best position to make such credibility determinations and, for this reason, the ALJ's credibility determinations are entitled to great weight.  *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  However, although the ALJ is responsible for determining Petitioner's credibility, he cannot reject his testimony without giving clear and convincing reasons.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  Here, the ALJ provided sufficient reasons for calling into question Petitioner's credibility.[10]

First, notwithstanding Petitioner's testimony, the ALJ highlighted evidence suggesting that Petitioner may not have been entirely objective when describing his alleged inability to work.  (AR 31, 404).  For example, despite Petitioner's alleged inability to be gainfully employed, he apparently is able to do household chores, yard work/gardening,[11] cook for himself and others, dress and bathe himself, go to the store, and run errands.  (AR 215).  Petitioner also

---

[10]  As previously discussed, the ALJ arguably considers Petitioner to be a malingerer given his attempts to exaggerate his limitations.  *See supra* at pp. 13-14 (citing (AR 31, 404)).  If so, the ALJ did not even need "clear and convincing" reasons to reject Petitioner's testimony about his physical condition.  *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) ("The ALJ could . . . reject [claimant's] testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" (Internal citations omitted)).

[11]  Within the November 18, 2005 Disability Hearing Officer's Decision, Hearing Officer, T. Carter, pointed out that

> [Petitioner's] neighbor has a painting business and [Petitioner] helps paint on occasion for a couple hours if an employee calls in sick.  He does not get paid and simply swaps labor with him.  He paints the edging near the floor, little things such as finish painting.

(AR 94).

**MEMORANDUM DECISION AND ORDER - 18**

has a number of hobbies, including reading, remote-controlled cars, Star Wars models, computer games,[12] and the occasional movie. *Id*. Although Petitioner's alleged inability to get along with others prevents him from working, he apparently enjoys "go[ing] down the street to the bowling alley" because "[h]e likes the owner," as well as his neighbor/friend, with whom he plays video games. (AR 94). Further, Petitioner testified that, while incarcerated, he was put in charge of a work crew due to his "good work ethic" but was unsuccessful "because [the other prisoners] didn't like the way [he] was, you know, basically outworking them." (AR 374).[13] These realities, either considered singly or in combination, indicate that Petitioner is either no longer

---

[12] Despite Dr. Green's diagnostic impression that Petitioner has "very pronounced issues of attention, concentration and focus . . . ." (AR 327), Petitioner painted a markedly different picture of his cognitive capabilities when he testified:

> Q:   What kind of computer games do you like to play?
>                                 ...
> A:   I got over 300 games for my computer.  It's just, the more complicated and more involving the game, the more I like it so that's why I kind of stick with role playing games that have, you know, like puzzles and . . . riddles and little things like that to keep me going.
>
> Q:   How much time do you spend normally on computer games?
>
> A:   I try to keep computer games down to a minimum, but I have this problem with losing time and I will spend anywhere sometimes up to about three days of playing constantly before I realize hey I'm hungry.

(AR 368-369).

[13] In addition to not referencing an inability to actually do the work, Petitioner further contradicted himself at the administrative hearing when he testified that the stress level at his phone center job was "pretty high over there." (AR 372). A year-and-a-half earlier, however, Petitioner seemed to indicate that he enjoyed the job, insisting that "it wasn't a high stress job until the company cut back." (AR 213).

**MEMORANDUM DECISION AND ORDER - 19**

disabled or, simply, not motivated or interested in working, thus compromising the persuasiveness of his efforts to retain disability benefits.  The ALJ appropriately incorporated these findings when he questioned Petitioner's credibility.

A second relevant consideration is the infrequency of mental health treatment that Petitioner received for his mental health problems that he now claims are disabling.  (AR 31, 404).  As discussed previously, it is understood that Petitioner received treatment as a child for his covered disabilities; however, the paucity of treatment notes discussing Petitioner's condition since then challenges Petitioner's credibility.  *See supra* at pp. 14-15; *see also* (AR 31, 404) ("If the claimant's mental health problems were not severe enough to motivate him to seek treatment, it is difficult to accept his assertion that they are disabling.")[14]

These reasons, together with the balance of potentially conflicting medical evidence (*see supra* at pp. 12-17), offer clear and convincing explanations as to why the ALJ did not find Petitioner entirely credible.  The ALJ's conclusion, while potentially at odds with another's interpretation of that same evidence, is nonetheless supported by substantial evidence in the record.  As required by controlling law, the ALJ will not be second-guessed here.  *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (Internal citations omitted)).

---

[14]  Petitioner's argument that "the ALJ fails to state how continued treatment would restore the claimant's ability to work" misses the point.  *See* Pet.'s Brief, p. 16 (Docket No. 8).  In discussing the absence of treatment notes commenting on Petitioner's alleged mental conditions(s), the ALJ is not so much indicating that treatment would help Petitioner, but rather that Petitioner no longer suffers from his previous impairments.

**MEMORANDUM DECISION AND ORDER - 20**

3.      <u>Kathy Nowlin's Testimony</u>

Kathy Nowlin, Petitioner's mother, offered testimony concerning Petitioner's condition. (AR 381-390).  The ALJ, however, lent little weight to Mrs. Nowlin's testimony in that it did not establish that Petitioner was disabled within the rubric of the Social Security laws.  (AR 32). Specifically, the ALJ contrasted what Mrs. Nowlin (who is not a medical expert) had to say with the medical findings contained in the record.  This approach is consistent with *Bayliss v. Barnhart*, where the Ninth Circuit reasoned:

> An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.  Inconsistency with medical evidence is one such reason.  The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard.  The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.

*Bayliss*, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, Mrs. Nowlin's close relationship with Petitioner and her desire to help him cannot be questioned.  However, Mrs. Nowlin's perspective remains inconsistent with evidence in the record.  As discussed before, Petitioner's potential to exaggerate his condition; the conflicting medical testimony from Dr. Smith and, possibly, Dr. Bostwick; and the lack of medical treatment for an extensive amount of time (*see supra* at pp. 12-20) provided the ALJ with reasons for doubting Mrs. Nowlin's testimony that are germane to her.  (AR 32, 405) ("Most importantly, significant weight cannot be given to the witness' testimony because it . . . is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.")  Therefore, there is no basis to claim that the ALJ improperly disregarded Mrs. Knowlin's testimony.  While ultimately not favorable to Petitioner, the ALJ's rejection of Mrs.

**MEMORANDUM DECISION AND ORDER - 21**

Nowlin's testimony was not made independent of the record.  Under these circumstances, because the evidence can reasonably support the ALJ's conclusion, this Court will not interfere with the ALJ's findings.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

## V.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its own interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

As to the ALJ's determination regarding Petitioner's credibility and Kathy Nowlin's testimony, the evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation by others.

However, the reasons given by the ALJ for disregarding Dr. Green's opinions may not be supported by the requisite substantial information in that Dr. Bostwick's opinions (which the ALJ relied upon) are incomplete given the timing of Dr. Bostwick's testimony, where he was unable to consider and incorporate Dr. Green's conclusions into the framework of his own opinion.  Therefore, the Court remands this action for further consideration.

## VI.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  The Commissioner's decision to reject Dr. Green's opinions is reversed and this matter is remanded

**MEMORANDUM DECISION AND ORDER - 22**

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this

Memorandum Decision and Order. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED: **March 16, 2009**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**